UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

BARBARA TILLMAN,

                          Plaintiff,                       Civ. No.

       - against -                          COMPLAINT

GRENADIER REALTY CORP. and          PLAINTIFF DEMANDS
GRC MANAGEMENT,                  A TRIAL BY JURY
                          Defendants.
-----------------------------------------------------------------x

Plaintiff Barbara Tillman, through her attorneys Vladeck, Raskin & Clark, P.C., complains of defendants Grenadier Realty Corp. ("GRC") and GRC Management ("GRCM") (collectively "Grenadier") as follows:

## NATURE OF ACTION

1.     After employing Tillman for about 44 years, defendants dismissed her when she was 84 years old, despite her history of excellent work.  Tillman brings this action to remedy discrimination in violation of the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 621 et seq. ("ADEA"); the New York State Human Rights Law ("State Law"), N.Y. Exec. Law § 296 et seq., and the New York City Human Rights Law ("City Law"), New York City Administrative Code, § 8–101 et seq.

2.     Tillman seeks injunctive and declaratory relief, compensatory, liquidated, and punitive damages, and all other appropriate equitable and legal relief pursuant to the ADEA, State Law, and City Law.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over plaintiff's ADEA claim pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 626(c) of the ADEA. This Court has supplemental jurisdiction over

plaintiff's claims under the State Law and City Law pursuant to 28 U.S.C. § 1367 because these claims closely relate to her ADEA claim, having arisen out of a common nucleus of operative facts, such that all claims form part of the same case or controversy.

4.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because plaintiff worked in this District and a substantial part of the events or omissions giving rise to the claims occurred in this District.

5.      Pursuant to Section 8-502(c) of the New York City Human Rights Law, plaintiff will cause to be served a copy of this Complaint on the City of New York Commission on Human Rights and the Corporation Counsel of the City of New York.

6.      On December 21, 2020, Tillman filed a charge against Grenadier alleging unlawful age discrimination with the United States Equal Opportunity Employment Commission (the "EEOC"). On June 10, 2021, at plaintiff's request, the EEOC issued plaintiff a notice informing her of the right to sue under the ADEA.

PARTIES

7.      Tillman worked at Grenadier for about 44 years before Grenadier unlawfully terminated her employment in March 2020.

8.      GRC is a New York corporation that provides property and leasing management services.  It also operates under the name GRCM.

FACTUAL ALLEGATIONS

Background

9.      Tillman is 86 years old.  She was born in July 1935.

10.      Tillman earned a B.A. in History in 1957 from Barnard College.

1180282 v1

11.     Tillman's early career was in public relations and network radio and television production, both commercial and non-profit

12.     Prior to joining Grenadier, Tillman held various positions in property management for government-assisted and market-rate housing developments. One of her jobs was on-site manager of Summit Plaza, a new assisted housing development in Jersey City that had its own cogeneration power plant that produced all utilities needed by the residents.  The development was considered a significant federal experiment in what was then called "Total Energy."

Grenadier/Starrett History

13.     Tillman's relationship with Grenadier began in May 1976 when she was hired to oversee rentals at Starrett City (now known as Spring Creek Towers), a federally assisted housing project in Brooklyn, New York with almost 6,000 apartments and approximately 15,000 residents.

14.     Starrett Housing Corporation ("Starrett," including its related entities), the builder and owner of Starrett City, established Grenadier several months after Tillman started at Starrett City as a subsidiary for the ongoing management of Starrett City and a significant portfolio of other properties built and owned by Starrett.  Grenadier was based in Starrett City.

15.     Blackstone Group, the private equity firm, had a significant interest in Starrett and Grenadier.  Blackstone later sold its interest in Grenadier to DVL Inc., a firm owned by Lawrence Cohen and Jay Chazanoff.  DVL has owned Grenadier since September 2017.

Plaintiff's Role

16.     After about a year and a half of overseeing rentals at Starrett City, Tillman moved into a role that drew on her energy experience, primarily her involvement with the cogeneration plant at Summit Plaza, which had become part of the Grenadier portfolio.  Like

1180282 v1

Summit Plaza, Starrett City had its own cogeneration power plant, and Tillman was asked to assist

in obtaining funding for a potential study of an energy conservation exchange of gas heat produced

by the Starrett City plant and digester gas produced by the New York City 26th Ward Water

Pollution Control Plant.  Tillman succeeded in obtaining a $1.2 million study grant from the U.S.

Department of Energy and was appointed Project Manager of the engineering team.

17.     Soon after, Tillman was asked to organize a Grenadier energy division.  She

formed Starrett Energy Services ("SES"), which was very active for about 14 years and thereafter

remained in place, as needed.  SES provided services to all properties in the Grenadier portfolio.

18.     In 1995, the New York Chapter of the Association of Energy Engineers

awarded Grenadier the "Corporate Energy Management of the Year" award.  The New York City

Department of Housing Preservation and Development ("HPD") also recognized Grenadier for

energy conservation at two properties, Carol Gardens and Arlington Terrace.

19.     Within a few years of founding SES, Tillman was promoted to Senior Vice

President for Energy and Special Projects for Grenadier.  She was responsible for all aspects of

energy efficiency, environmental regulations, and obtaining energy conservation grant funding for

all of Grenadier's eligible properties.  As a result of her work, Grenadier's properties saved

millions of dollars.

20.     For several years Tillman was also responsible for overseeing the Starrett

City power plant.  She switched the power plant from oil to gas being the primary fuel and made

Starrett City the first New York City housing development to buy gas from the market, saving

millions of dollars.  Buying from the market, she also saved substantial money for other Grenadier

properties.

4

21.     Among the non-energy special projects Tillman oversaw, she represented Grenadier on the Mayor's Private Sector Survey in developing a report regarding HPD residential buildings.  For another special project, she participated in outreach to add properties to the Grenadier portfolio.

22.     For several years Tillman served on the Multi-Family Advisory Committee for the New York State Energy Office to explore new methods of increasing energy efficiency in multi-family housing and on the Board of the New York City Technical College Foundation.

23.     For many years, Tillman has been a member of the New York Association of Energy Engineers.

<u>Sale of Starrett City</u>

24.     In 2017, the sale of Starrett City was announced, which was approved in spring 2018.  Grenadier continued to manage Starrett City after the sale.

25.     Upon information and belief, from the 1970s to 2019 Starrett City paid half of Tillman's salary and Grenadier paid the other half.

26.     In or about late 2019 Grenadier ceased managing Starrett City.

<u>Grenadier Dismisses Older Employees, Including Plaintiff</u>

27.     From the mid-1990s until April 2019, Felice Michetti was the Chairperson and CEO of Grenadier.

28.     In December 2018, Michetti told Tillman that she was going to be laid off in March 2019.  Michetti said that Tillman was going to be a "test case."

29.     In January and February 2019 Tillman reached out several times to get information about her dismissal from Rod Robertson, Director of Human Resources, as her

understanding was that her employment would be terminated at the end of February.  He told her

he would have information soon.

31. On February 27, 2019, Robertson emailed Tillman that he had been advised

to hold off on terminating her employment and that she would remain on payroll the following day

unless something changed.

31. On March 8, 2019, Robertson emailed Tillman that David Goldban, General

Counsel, and Peter Gray, a Grenadier senior executive, wanted to meet with her about her position

with Grenadier.

32. Tillman met with Robertson, Goldban, and Gray on or about March 13,

2019.  Gray said that they did not want to lay her off.   He said that there were a lot of projects for

her to work on and that Grenadier would pay her full salary.

33. On March 14, 2019, Robertson sent Tillman an email confirming that her

position was not being eliminated.  He wrote, "There are many important projects that are available

for you to work on in your capacity as Senior Vice President of Energy and Special Projects,

especially related to recent Cogen projects at the Bay Parks and Surf 21, Local Law 87 compliance

and other energy related issues throughout the Grenadier portfolio including Manhattan Park."

Tillman responded with an email reaffirming that she wished to remain in her current position.

34. In March 2019, Grenadier drastically reduced the severance it offered

employees from 2 weeks per year to 1 week per year, and capped it at 12 weeks.

35. In April 2019, upon information and belief, Grenadier pushed out Michetti,

who was 69 years old at the time.

36. Grenadier replaced Michetti with Ryan Moorehead, who held the titles of

CEO and President.  Moorehead was in his late thirties or early forties.

37.     Tillman continued to try to remain productive, but she faced obstacles.

38.     Tillman learned from one of her colleagues that Pat LoRusso, one of the two construction specialists who had been on her energy team, had been elevated above her; he is at least 25 years younger than Tillman and, upon information and belief, is still employed by Grenadier.

39.     When Grenadier moved its headquarter in 2019, LoRusso was given an enclosed office.  Tillman was given a desk that was the closest one to the office entrance, making her the de facto back-up for the receptionist.

40.     One of Tillman's responsibilities was overseeing Local Law 87 compliance, which mandates energy audits and other requirements for larger properties.  Without consulting Tillman, Warren Harr, who is in his fifties, issued a memorandum to property managers about Local Law 87.  Tillman objected to him preempting her work.  Moorehead told Tillman that the interference would stop, but her ability to manage the process was already diminished by the memorandum being sent out behind her back.  Upon information and belief, Harr remains employed by Grenadier.

41.     Despite the interference, Tillman succeeded in administering the requirements of Local Law 87, including obtaining unusually low prices from the engineering firms needed for Local Law 87.

42.     In or about July 2019, Grenadier canceled its severance policy entirely.

43.     In fall 2019, Moorehead asked Tillman how much longer she intended to work.  She said that she wanted to work for a few more years.  He then asked if she was interested in transitioning to being a consultant.  She said she was not.

1180282 v1

44.	On February 25, 2020, Moorehead offered Tillman a role as a consultant. He later specified that she would be paid monthly fees that would total at most $40,000 per year. At the time, her salary was about $137,500.  Tillman told Moorehead she was not interested in such a reduced role.

45.	On March 6, 2020, Grenadier terminated Tillman's employment.

46.	Until Tillman's dismissal, she was the oldest employee at Grenadier.

47.	Since spring 2019, Grenadier has let go a number of older, long-term employees, including a woman who was almost 70 and had worked at Grenadier for 27 years; another woman who was 79 and had worked at Grenadier for 39 years; and the Chief Financial Officer, who was almost 67 years old and had been with Grenadier for 29 years.  During that same time, Grenadier had hired a number of much younger employees.

FIRST CAUSE OF ACTION
ADEA: Age Discrimination

48.	Plaintiff repeats and realleges paragraphs 1 through 47 as if fully set forth herein.

49.	By the acts and practices described above, defendants discriminated against plaintiff in the terms and conditions of her employment on the basis of her age in violation of the ADEA.

50.	Defendants knew that their actions constituted unlawful discrimination and/or acted with malice or reckless disregard for plaintiff's statutorily protected rights.  These violations were willful within the meaning of the ADEA.

51.	Plaintiff has suffered and will continue to suffer irreparable injury and monetary damages as a result of defendants' discriminatory practices unless and until this Court grants relief.

1180282 v1

## SECOND CAUSE OF ACTION
State Law: Age Discrimination

52.     Plaintiff repeats and realleges paragraphs 1 through 51 as if fully set forth herein.

53.     By the acts and practices described above, defendants, in violation of the State Law, discriminated against plaintiff on the basis of her age.

54.     Defendants acted with malice and/or reckless indifference to plaintiff's rights protected under state law.

55.     Plaintiff has suffered and will continue to suffer irreparable injury, monetary damages, mental anguish, emotional distress, humiliation, and other compensable damages as a result of defendants' discriminatory practices.

## THIRD CAUSE OF ACTION
City Law: Age Discrimination

56.     Plaintiff repeats and realleges paragraphs 1 through 55 as if fully set forth herein.

57.     By the acts and practices described above, defendants, in violation of the City Law, discriminated against plaintiff on the basis of her age.

58.     Defendants engaged in discrimination with willful or wanton negligence, with recklessness, and/or with a conscious disregard of plaintiff's rights or conduct so reckless that it amounts to such disregard.

59.     Plaintiff has suffered and will continue to suffer irreparable injury, monetary damages, mental anguish, emotional distress, humiliation, and other compensable damages as a result of defendants' discriminatory practices.

1180282 v1

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff respectfully requests that this Court enter a Judgment:

(a)     declaring the acts and practices complained of herein to be violations of the ADEA, the State Law, and the City Law;

(b)     enjoining and permanently restraining these violations of the ADEA, and the State Law,  and the City Law;

(c)     directing defendants to take such affirmative steps as are necessary to ensure that the effects of these unlawful practices are eliminated and do not continue to affect plaintiff's employment opportunities;

(d)     directing defendants to place plaintiff in the position she would have occupied but for defendants' unlawful treatment of her, and making her whole for all earnings and other benefits she would have received but for defendants' discriminatory treatment, including but not limited to wages, including back pay and front pay, bonuses, and other lost benefits;

(e)     directing defendants to pay plaintiff compensatory damages, including damages for emotional distress, humiliation, pain and suffering, and injury to professional standing and reputation;

(f)     directing defendants to pay liquidated damages for its violation of the ADEA;

(g)     directing defendants to pay plaintiff additional amounts as punitive damages;

(h)     awarding plaintiff such interest as is allowed by law, and damages for any adverse tax consequences stemming from an award;

(i)     awarding plaintiff the costs of this action, together with reasonable attorneys' fees; and

1180282 v1

(j)     awarding such other and further relief as this Court deems necessary and

proper.

### DEMAND FOR A TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiff demands

a trial by jury in this action.


Dated: New York, New York
       August 26, 2021



                                    VLADECK, RASKIN & CLARK, P.C.



                          By:         /s
                                    Anne L. Clark
                                    Attorneys for Plaintiff
                                    565 Fifth Avenue, 9th Floor
                                    New York, New York 10017
                                    (212) 403-7300

1180282 v1